## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| *JESSICA SALISBURY,* | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| *v.* | ) | *No. 1:12-cv-60-GZS* |
| | ) | |
| *MICHAEL J. ASTRUE,* | ) | |
| *Commissioner of Social Security,* | ) | |
| | ) | |
| *Defendant* | ) | |

## REPORT AND RECOMMENDED DECISION[1]

The plaintiff in this Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises four issues: whether the testimony of the medical expert at the hearing was fatally flawed; whether the residual functional capacity ("RFC") assigned to the plaintiff by the administrative law judge improperly excluded certain mental limitations; whether the RFC improperly treated the plaintiff's right shoulder limitations; and whether the testimony of the vocational expert at the hearing was unacceptable as a matter of law.  I recommend that the court affirm the commissioner's decision.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff met the insured

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3).  The commissioner has admitted that the plaintiff has exhausted her administrative remedies.  The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office.  Oral argument was held before me on December 12, 2012, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

status requirements of the Social Security Act, for purposes of her SSD claim, only through June 30, 2008, Finding 1, Record at 13; that she suffered from status post arthroscopic acromioplasty for right shoulder impingement/ac arthrosis, anxiety-related disorder/post-traumatic stress disorder ("PTSD"), and substance addiction disorder/polysubstance abuse, impairments that were severe but which did not, considered separately or in combination, meet or equal the criteria of any impairment listed in Appendix 1 to 20 C.F.R. Part 404, Subpart P (the "Listings"), Findings 3-4, *id*. at 14-15; that she retained the RFC to perform light work, except that she could never crawl or climb ladders, ropes, or scaffolds, could reach at shoulder level occasionally, could never reach overhead, must avoid unprotected heights, could understand and remember simple to moderately detailed instructions, could execute simple to moderately detailed tasks, could interact superficially with the general public, and could adapt to routine changes in the workplace.  Finding 5, *id*. at 17-18; that she had no past relevant work, Finding 6, *id*. at 22; that, given her age (30 at the date of alleged onset of disability, a younger individual), at least a high school education, and RFC, there were jobs existing in significant numbers in the national economy that she could perform, Findings 6-10, *id*. at 22-23; and that, therefore, she had not been under a disability as that term is defined in the Social Security Act at any time through the date of the decision, August 10, 2011.  Finding 11, *id*. at 24.  The Appeals Council declined to review the decision, *id*. at 1-3, making it the final determination of the commissioner.  20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Secretary of Health & Human Servs*., 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence.  42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).  In other words, the

determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

### A. Testimony of the Medical Expert

The plaintiff begins by challenging the testimony of James Claiborn,[2] Ph.D., a psychologist who testified as a medical expert at the hearing. Plaintiff's Itemized Statement of Errors ("Itemized Statement") (ECF No. 14) at 4-7. She contends that his testimony is based on two "false premises," and, therefore, must be disregarded in its entirety. *Id.* at 4. The plaintiff identifies the "false premises" as Dr. Claiborn's testimony "that only Ms. Salisbury's PTSD and poly-substance dependence impairments had been appropriately diagnosed" and that "the examining psychologist in this case, Dr. DiTullio, had opined that Ms. Salisbury 'could not handle even simple tasks.'" *Id.* at 5.

With respect to the first "false premise," the plaintiff asserts only that she "has been diagnosed with bipolar disorder and/or depression by" four medical professionals and with

---

[2] The transcript spells Dr. Claiborn's name with a final "e." I have used the spelling given in Dr. Claiborn's Resume and Statement of Professional Qualifications, which he apparently filled out himself. Record at 195.

attention deficit hyperactivity disorder by one of them. *Id.* This does not render false Dr. Claiborn's opinion that these impairments were not "appropriately diagnosed;" the two statements are not mutually exclusive. This argument fails on its face.

As to the second "false premise," it may well be that "Dr. Claiborn's testimony mischaracterizes Dr. DiTullio's medical source statement finding that Plaintiff's ability to understand, remember, and carry out *detailed* instructions is markedly impaired," *id.* (emphasis in original), by saying that Dr. DiTullio had opined that the plaintiff "could not handle even simple tasks." Record at 88. However, the plaintiff does not indicate how this alleged mischaracterization necessarily affected the outcome of her claims. *See, e.g., Jolicoeur v. Social Sec. Admin. Com'r*, No. 1:09-cv-389-JAW, 2010 WL 3274715, at *7 (D. Me. Aug. 5, 2010).

In this regard, the plaintiff also takes issue with the administrative law judge's statement that Dr. Claiborn "testified that he disagrees with several of Dr. DiTullio's conclusions, particularly the portion of his opinion that the claimant is not capable of performing even simple tasks," Record at 21, asserting that "Dr. DiTullio made no such finding." Itemized Statement at 6. It is true that Dr. DiTullio did not check the boxes on the form provided to him by the plaintiff's attorney, who referred her to him for a one-visit evaluation, Record at 1161, indicating that her ability to "understand and remember very short and simple instructions," and to "carry out very short and simple instructions" were "markedly limited or effectively precluded," *id.* at 1159, but it is also true that Dr. DiTullio concluded that the plaintiff had been "disabled, both vocationally and socially, by her mental disorders at least since 11/01/2007[.]" *Id.* at 1163.

Accordingly, even if Dr. Claiborn and/or the administrative law judge[3] "mischaracterized" Dr. DiTullio's specific findings, any such error could only be harmless, because he did in fact conclude that the plaintiff was totally disabled by her mental impairments.

The plaintiff goes on to characterize Dr. Claiborn's testimony as "unclear" and asserts that it should be rejected because he did not explain "how he differentiated between moderate and marked symptoms." Itemized Statement at 6. She cites no authority for this abbreviated argument. She also characterizes as fatally "equivocal" Dr. Claiborn's testimony that "being unable to function for four days per month is not inconsistent with [her] mental health diagnosis." *Id*. at 7. The testimony at issue is the following:

> Q. . . . You find she has moderate difficulties in attending to tasks, and he found those marked.
>
> A. That's correct.
>
> Q. How do you make that distinction?
>
> * * *
>
> A. . . . I try to consider what evidence I have about the degree of dysfunction that a person is likely to experience as a result of the disorder that has been diagnosed. And that's an evaluative process that – I think I have a little trouble articulating exactly how I go about it. But I offer the opinion that it's at the moderate level of impairment in that area.
>
> Q. And if she does have a moderate level of impairment in that area, how do you conclude that she would be able to persist at a regular eight-hour, 40-hour a week job over time with that kind of limitation?
>
> A. Well, I think people with a moderate level of impairment in that area would have some difficulty getting to work on time or persisting at task. It doesn't mean they can't do it.

---

[3] The administrative law judge correctly noted that Dr. DiTullio stated that "the claimant is unable to sustain[,] understand, remember, and carry out anything more than very short and simple instructions[.]" Record at 21.

Q.  So you're talking about volition, that her compliance is a matter of volition?

A.  That's certainly, part of it is, yes.

Q.  And how do you ferret that out from her mental illness?

A.  I don't know how to answer that.  In evaluating a person's ability to function in terms of the criteria and to consider what it is that I think the diagnosed disorder is going to impose in the way of restrictions and that may or may not correspond exactly to what the person does. Because behavior may well, as you described it, is operative, is to say people act in ways to get things that are payoffs or rewards for them, reinforcements for themselves.
Sometimes persisting at tasks or not, based on their own volitional decisions rather than because they can't concentrate, for example, because the symptoms outside of their control of the disorder is so impairing they can't concentrate.  When it reached that level, then I would say the marked impairment is the result of the disorder rather than the person's volitional choice.

Record at 96-97.

First, it is apparent that this testimony addressed only one criterion, attending to tasks, and not all of the possible limitations imposed by a mental illness, as the plaintiff implies.  Even if that particular opinion should be rejected, therefore, Dr. Claiborn's remaining conclusions support the administrative law judge's conclusions.  Further, when seen in context, the single sentence quoted by the plaintiff does not render Dr. Claiborn's testimony unclear or equivocal.[4]

The plaintiff also found it significant in connection with this issue that "[t]he ALJ rejected the views of both DDS reviewers, both of whom found that Ms. Salisbury met listing 12.09."  Itemized Statement at 6.  As counsel for the commissioner noted at oral argument, Listing 12.09 deals with substance abuse disorders, for which Social Security benefits are unavailable in any event.  "An individual shall not be considered to be disabled for purposes of

---

[4] The plaintiff also repeats Dr. Claiborn's testimony in response to her attorney's questions to the effect that she "probably needs a form of cognitive behavioral therapy, over a period of months, and that she had not had such treatment."  Itemized Statement at 6.  This testimony has no bearing on the plaintiff's eligibility for Social Security benefits.

this title if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J). This framework is applied by the commissioner to preclude an award of benefits when substance abuse is a contributing factor necessary to a finding of disability. *E.g., Parra v. Astrue*, 481 F.3d 742, 744 (9th Cir. 2007); *Gonzalez v. Secretary of Health & Human Servs.*, 360 Fed.Appx, 240, 242 (2d Cir. 2010); *Mirabile v. Commissioner of Soc. Sec.*, 354 Fed.Appx. 619, 621 (3d Cir. 2009). The question of whether the plaintiff met this Listing thus could not have any positive bearing on her claim for benefits.

Finally, the plaintiff complains that the administrative law judge "failed to grant" her attorney's request that she be sent for a consultative examination. Itemized Statement at 7. This court has repeatedly held that the decision to refer a claimant for a consultative examination is one that is within the administrative law judge's discretion. *E.g., Rudge v. Astrue*, No. 1:11-cv-440-DBH, 2012 WL 5207591, at *2 (and cases cited therein) (D. Me. Sept. 20, 2012). The plaintiff here has not made the necessary showing of an abuse of that discretion. *Id*.[5]

### B.  Mental RFC

The plaintiff's next challenge to the administrative law judge's conclusion is an assertion that "the RFC finding does not adequately account for Ms. Salisbury's functional limitations." Itemized Statement at 7. The challenge is not presented with much specificity, but apparently she contends that a limitation to superficial contact with the public is insufficient because Dr. DiTullio assessed her limitation in this area as marked. *Id*. at 9. She does not suggest why Dr. DiTullio's opinion should have controlling weight, and, in any event, the administrative law

---

[5] At oral argument, the plaintiff's attorney conceded that this claim does not provide an independent basis for remand.

judge gave sufficient reasons for rejecting it.  Record at  21; *see generally Poisson v. Astrue*, No. 2:11-cv-245-NT, 2012 WL 1067661, at *8 (D. Me. Mar. 28, 2012).

### C.  Physical RFC

The plaintiff next argues that the administrative law judge committed a fatal error by failing to include in her RFC "limitations regarding reaching in all directions."  Itemized Statement at 10.  This assertion is based on records from Dr. Anthony Mancini for the period from March 2010 to August 2011, *id.*, and the opinion of Dr. Donald Trumbull, apparently for the entire period from the alleged date of onset, *id.* at 9-10.   In fact, the administrative law judge did include in the plaintiff's RFC restrictions on reaching in all directions: he found that she "can reach below shoulder level frequently; can reach at shoulder level occasionally; must never reach overhead[.]"   Record at 18.  There are no other apparent directions in which to reach, at least with respect to the shoulder, which is the area of the physical impairment at issue.

It is not possible to discern in what manner the plaintiff contends that these limitations should have been more severe.  Certainly neither Dr. Trumbull nor Dr. Mancini said that she could not reach at all.  As the administrative law judge noted, *id.* at 21, Dr. Mancini stated that the surgery that was performed on the plaintiff's shoulder shortly before the hearing would limit her use of her right arm for approximately three months, following which her shoulder function would be improved.  *Id.* at 1198.  Nothing in the pages 912 and 1232 of the record, the only other pages cited by the plaintiff, supports any limitation on reaching in all directions beyond those included by the administrative law judge in the plaintiff's RFC.  There is no mention of the closed period mentioned by the plaintiff.

Dr. Trumbull is a state-agency physician reviewer, who did not examine the plaintiff.  He checked the box on the RFC form indicating that "[r]eaching in all directions" was limited, and

added "NO CONSTANT OVERHEAD WORK." *Id.* at 810. He does not specify further the degree to which reaching in any direction other than overhead was limited, and the limitations assigned by the administrative law judge accordingly cannot be said to be inconsistent with his conclusions. In addition, at least one of the specific jobs identified by the administrative law judge as being available for the plaintiff, sandwich board carrier, requires only occasional reaching, *Dictionary of Occupational Titles* (U.S. Dep't of Labor, 4th ed. rev. 1991), § 299.687-014, which is consistent with the limitations imposed by Dr. Trumbull.

The plaintiff is not entitled to remand on this basis.

### D. Vocational Expert Testimony

Lastly, the plaintiff attacks the hearing testimony of the vocational expert on two grounds. Her first contention is that the vocational expert's testimony was fatally flawed because the hypothetical question posed to him by the administrative law judge "did not accurately reflect the medical evidence." Itemized Statement at 11. This argument is based entirely on her preceding arguments concerning the testimony of Dr. Claiborn and the RFC assigned to her by the administrative law judge, all of which I have rejected. Accordingly, she is not entitled to relief on this basis.

The plaintiff's second contention is a slight variation on a theme that has been presented unsuccessfully in previous cases. She asserts that the vocational expert's testimony is "speculative" and "unreliable" because the job numbers to which he testified for each of the identified occupations were based on the Occupational Employment Quarterly (also referred to as the "SOC code" numbers). *Id.* at 12. She makes the same argument made unsuccessfully by

her attorney in *Clark v. Astrue*, No. 2:11-cv-373-DBH, 2012 WL 2913700, at *3-*4 (D. Me. June 28, 2012).[6]

The plaintiff attempts to distinguish her argument from that rejected in the 2012 *Clark* decision because "the ALJ made no attempt to deal with this issue in his decision[]" in the instant case.  Itemized Statement at 12 n.3.  However, if the argument would not succeed in any event, it makes no difference whether the administrative law judge addressed the issue.  And that is the case here, where the vocational expert gave his reasons for citing the data source at issue. *Clark*, 2012 WL 2913700, at *4 & n.3.[7]

## II.  Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **AFFIRMED**.

---

[6] The plaintiff also cites *McDonald v. Barnhart*, No. 05-69-B-W (D. Me 2005), and *St. Pierre v. Astrue*, No. 1:10-cv-104-JAW, 2010 WL 5465635 (D. Me. Dec. 29, 2010), in support of her position.  Itemized Statement at 13. Both opinions are readily distinguishable.  In *McDonald*, the vocational expert "gave no testimony regarding the exact number of jobs available" after stating that the number would be "significantly limited" by the plaintiff's transferable skills.  2005 WL 3263937 at *4.  In *St. Pierre*, I recognized the difference between *Decker v. Astrue*, Civil No. 09-641-P-S, 2010 WL 4412142 (D. Me. Oct. 31, 2010), and *Clark v. Astrue*, Civil No. 09-390-P-H, 2010 WL 2924237 (D. Me. July 19, 2010), as follows: "[In *Decker*, t]his court distinguished *Clark* on the ground that the vocational expert in *Decker* relied not solely on the SOC code but also on his 30 years of experience and on market surveys, going so far as to testify that his numbers were 'the best . . . from using the resources I have available . . . . It's . . . what I believe is a fair and accurate number.' . . . Insofar as appears from the record, this is a case in which, as in *Clark*, the vocational expert simply relayed numbers keyed to SOC and census codes without attempting to specify the percentage attributable to the specific D[ictionary of] O[ccupational] T[itles]-coded jobs in question." 2010 WL 5465635 at *3 n.3.  The same is true here.  Record at 116 (only two DOT jobs within SOC code for sandwich board carrier), 120 (only one DOT job within SOC code for escort vehicle driver), 126 (two DOT jobs within SOC code for parking lot attendant).  So, for one of the three jobs identified in the administrative law judge's opinion, the SOC and DOT numbers would be identical, and for the other two, they would be close.  In addition, the vocational expert testified that he uses the Department of Labor data expressed in SOC codes because he "always thought it was excellent.  I have no reason to question it[,]" *id.* at 128; that he had "given . . . the numbers based upon the quarterly update of the data because I believe it's the best information possible to express the number of incidents of those in the national economy[,]" *id.* at 129; and that the source of his numbers was "something that people in [his] profession generally turn to as a basis for identifying the [incidence] of jobs in the economy" for "[a]s long as I can recall."  *Id.* at 130.

[7] Contrary to the plaintiff's assertion, Itemized Statement at 12, the administrative law judge did *not* "concede," nor did the vocational expert testify that the numbers he gave for any of the three jobs specified by the administrative law judge in his decision "represent occupations that are contained within the census code *but which would be inconsistent with the RFC limitations assessed by the ALJ*."  *Id.*  (italics in original); s*ee* Record at 116-17 (the only citation to the record given in the itemized statement to support this assertion).

<u>***NOTICE***</u>

***A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which <u>de novo</u> review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.***

***Failure to file a timely objection shall constitute a waiver of the right to <u>de novo</u> review by the district court and to appeal the district court's order.***

Dated this 31st day of December, 2012.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge